AO 106A (08/18) Application for a Warrant by Telephone or Other Reliable Electronic Means

FILED
UNITED STATES DISTRICT COURT
LAS CRUCES, NEW MEXICO

AUG 11 2023

MITCHELL R. ELFERS
CLERK OF COURT

# UNITED STATES DISTRICT COURT
for the
District of New Mexico

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )  Case No. 23-1536 MR
)
Residence at 803 E. 5th St, Roswell, NM, 88201 )
(Subject Premises) )

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A, which is attached hereto and fully incorporated herein.

located in the   County of Chaves   District of   New Mexico  , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, attached hereto and fully incorporated herein by reference

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
☑ evidence of a crime;
☑ contraband, fruits of crime, or other items illegally possessed;
☑ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 USC 841 | Distribution and Possession with Intent to Distribute a Controlled Substance |
| 21 USC 846 | Conspiracy to Distribute a Controlled Substance |

The application is based on these facts:
See Affidavit in Attachment C, attached hereto and fully incorporated herein by reference

☑ Continued on the attached sheet.
☐ Delayed notice of ____ days *(give exact ending date if more than 30 days: _____ )* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Joseph Walker, HSI Task Force Officer
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
  telephone                                                      *(specify reliable electronic means)*.

Date: August 11, 2023

*Judge's signature*

City and state: Las Cruces, New Mexico     Jerry H. Ritter, United States Magistrate Judge
*Printed name and title*

## ATTACHMENT A

### DESCRIPTON OF LOCATION TO BE SEARCHED

The Subject Premises is the residence located at 803 E. 5th St, Roswell, New Mexico, 88201. The Subject Premise to be searched includes a includes a single-family home structure. The residence is constructed out of brick, red in color, and has a salmon in color trim. There is a porch awning attached to the front of the residence. The front door faces the south and a driveway is located on the west of the front yard. The front yard has no fence.



## ATTACHMENT B

### Items to be Seized

Evidence of violations of 21 U.S.C. §§ 841 and 846, including the following items:

1. Any cellular telephones, digital tablets, personal digital assistant (PDA) devices or other communication devices and any and all information stored on such communication devices, including:

   a. Phone numbers, names, usernames, email addresses, residential addresses, and other identifying information of customers, distributors, sources of supply, and other associates of the user of the communication devices;

   b. Audio and video calls made to or from the communication devices, along with the duration and date and time each such communication occurred;

   c. Any message logs or messages, whether sent from, to, or drafted on the communication devices, along with the date and time each such communication occurred;

   d. The content of voice mail messages and audio and video messages stored on the communication devices, along with the date and time each such communication occurred;

   e. Photographs or video recordings;

   f. Information relating to the schedule, whereabouts, or travel of the user of the communication devices;

   g. Information relating to other methods of communications, including the contents of those communications, utilized by the user of the communication devices and stored on the communication devices;

   h. Bank records, checks, credit card bills, account information and other financial records; and

   i. Evidence of user attribution showing who used or owned the communication devices, such as social media accounts, email addresses, messages, location information, photographs and videos, phonebooks, saved usernames and passwords, documents, and internet browsing history;

2. Records relating to the importation, distribution, and possession of controlled substances, including, but not limited to books, records, receipts, cell phones, cell phone records, notes, ledgers, notebooks, border crossing documents, designated codes and other papers relating to the transportation, ordering, purchase and distribution of controlled substances including but not limited to methamphetamine;

3. Papers, tickets, notes, schedules, receipts including bill of sales for vehicles, registration and licensing of vehicles, license plates, vehicle titles, registration, documents, stickers, and other proof of ownership and tax compliance, driver's license, or proof of insurance and liability;

4. Financial documents, including but not limited to, credit card statements, tax returns, safe deposit records, safe deposit keys, bank records, bank statements, money orders, Western Union receipts, checking account records, cashier's checks, passbooks and other items evidencing the obtainment, concealment and/or expenditure of money or assets;

5. Identification and personal records including address books, telephone directories, calendars, diaries, social security cards, lists of names, social security numbers and other personal identification, telephone and address books or papers of individuals involved in the trafficking of controlled substances;

6. Photographs, video recordings, slides, digital files, DVDs, CD-Rs, or other media containing images or video of individuals involved in the trafficking of controlled substance which demonstrate his/her involvement in drug trafficking as well as other notes, records, diaries, journals, emails, blog entries, which demonstrate involvement in drug trafficking;

7. Proceeds of an unlawful activity, including but not limited to, United States currency, jewelry, vehicles and other assets or financial records related thereto;

8. Documents, books and papers reflecting names, addresses and/or telephone numbers and lists pertaining to individuals involved in the trafficking of controlled substances, including but not limited to methamphetamine;

9. Diaries, purchase records, cash receipts and disbursement journals, inventory records and other records relating to the operation of controlled substance sales, repackaging, and redistribution in violation of 21 U.S.C. 841 and 846;

10. United States currency, currency counting machines, precious metals, jewelry, financial instruments including stocks and bonds, and all other items of value, and all sales receipts for items of value, that evidence the proceeds from the smuggling, transporting or distribution of drugs.

11. Devices or objects utilized to account for proceeds related to violation of violation of 21 U.S.C.§§ 841 and 846, including but not limited to currency counting machines;

12. Controlled substances, drug paraphernalia, and packaging materials, including scales, plastic baggies, vacuum sealing machines, and tape;

13. Firearms and ammunition as defined by Title 18 USC Section 921;

14. Valid or false identification documents, including drivers' licenses, social security cards, state identification cards and foreign identification documents;

15. Bills, notes, contracts, or other documents reflecting the ownership, subscription information or use or control of one or more telephones or the location to be searched;

16. Tools utilized in the alteration of motor vehicles to facilitate transporting narcotics in violation of 21 U.S.C. §§ 841 and 846; and

17. Safes, lock boxes, or other locked containers, in which the items in paragraphs 1 through 16 could be concealed.

# ATTACHMENT C
# AFFIDAVIT IN SUPPORT OF ORDER AUTHORIZING SEARCH WARRANT

I, Joseph Walker, being first duly sworn, herby depose and state as follow:

1. This Affidavit is submitted in support of an order authorizing the entry into the Subject Premises, as more fully described below and in Attachment A to the Search Warrant Application, for the purpose of searching and seizing evidence of violations of 21 U.S.C. §§ 841 and 846 (distribution and possession with intent to distribute a controlled substance and conspiracy to do the same).

## INTRODUCTION

2. I am a Task Force Officer (TFO) with the Department of Homeland Security Investigations (HSI). As such, I am a law enforcement officer of the United States within the meaning of 18 U.S.C. § 2507(7) and am empowered by law to conduct investigations and to make arrests for offenses enumerated in 18 U.S.C. § 2516.

3. My experience as a TFO includes, but is not limited to, conducting criminal investigations concerning violations of the Controlled Substances Act, conducting physical surveillance, interviewing witnesses, writing affidavits for and executing search warrants, working with undercover agents and informants, issuance of administrative and federal grand jury subpoenas, analysis of phone toll and financial records, and analysis of data derived from the use of pen registers, and trap and traces.

4. I have received training and have experience in the investigation of violations of the federal drug and money-laundering laws. As a result, I am familiar with matters including the

means and methods used by persons and drug trafficking organizations to purchase, transport, store, and distribute drugs, and to hide profits generated from those transactions.

5. Through my training, education, and experience, I have become familiar with the following:

    a. Drug traffickers commonly keep books, records, receipts, notes, ledgers, and other papers relating to the transportation, ordering, purchase, and distribution of controlled substances.

    b. Drug traffickers often amass large amounts of profits derived from their illegal drug trafficking activities. Documents and other records pertaining to assets which are proceeds of the drug trafficking described herein would constitute evidence of the same drug trafficking.

    c. Drug traffickers often maintain large amounts of U.S. currency derived from illegal activities.

    d. Drug traffickers often maintain ledgers, account books and other papers detailing the receipt, storage, sale and distribution of drugs. These ledgers often contain amounts of drugs obtained by the organization, and accounting of payments of drug proceeds, including accounts receivable and accounts payable.

    e. Drug traffickers often maintain phone books, address books and other papers containing names, telephone numbers, and addresses of suppliers and purchasers of drugs. Drug traffickers will often write these documents in code and they maintain documents containing the key to their codes.

    f. Drug traffickers also often maintain documents or receipts for various services, such as bank statements, telephone bills, utility bills, vehicle repair, consumer

goods purchases, all evidencing the disposition of illegal profits, the existence of "stash houses," and the existence of other assets derived from drug proceeds. Drug traffickers often maintain various documents evidencing ownership of assets such as real estate deeds, vehicle titles, and insurance policies.

g. Drug trafficking is a "for profit business" and, as such, traffickers must maintain the types of documents described above so as to determine profitability and to track debts owed by and to the trafficker.

h. Drug traffickers often keep photographs and videos of themselves and their co-conspirators, drugs, and their illegal profits.

i. Drug traffickers often use surveillance cameras in and around their residences and locations where drugs are stored to detect law enforcement and to protect drugs and drug proceeds. These surveillance cameras can be capable of storing footage within the camera or on a separate storage device.

j. Drug traffickers often maintain safes or deposit boxes where they store drugs, U.S. currency and other documents evidencing their drug trafficking. It is common knowledge that safe deposit boxes require the owner to keep the key to the safe deposit box.

k. Drug traffickers often have in their possession firearms and ammunition to protect themselves, their drugs and the proceeds derived from the distribution of drugs from individuals who seek to rob them or from competing drug traffickers.

l. Drug traffickers often maintain one or more cellular or "smart" telephones ("devices") which they utilize to further their drug trafficking. Drug traffickers use these devices to communicate operational directives and information concerning

the conduct of the organization's illegal activities to other organization members, including their suppliers, distributors and other co-conspirators. I know, based upon my training and experience, that timely communication of information between organizational members is critical to the overall success of an organization's illegal activities. The critical nature of this information is derived from the necessity of the organization's management to provide instructions for the importation, storage, transportation, and distribution of drug, as well as the subsequent laundering of the proceeds of these illegal activities.

m. I also know that some devices utilize subscriber identity module ("SIM") cards. A SIM card is a chip that is used to authenticate a device to a network. The SIM card generally contains subscriber information and authentication information, and it may contain contacts and encryption information. The portability of SIM cards in some devices allows a user to easily change devices, while maintaining the same telephone number, by removing the card from one device and inserting it into another. While SIM cards may have the capability to store some of the evidence described above, the storage capacity of devices tends to far exceed that of SIM cards. Which information is stored on the SIM card, on the device, or in both locations varies and depends on variables such as the user-defined settings on the device and the memory capacity of the SIM card. Accordingly, information pertaining to drug trafficking activity may be located on the SIM card itself, as well as the device in which the SIM card was inserted.

n. I further know from my training and experience that a cache of information including dialed, received or missed calls and messages sent, received or placed in

draft status, can be found on these devices. I know that the identities and telephone numbers of other participants in the drug trafficking activity are maintained in the contact lists of these devices. In my experience, drug traffickers also use these devices to take and store photographs or video recordings of themselves with their co-conspirators and with contraband, including drugs, currency and firearms. Drug traffickers also use the GPS or location applications of these devices, which can reveal their whereabouts when they conducted or arranged drug related activities or travel. In addition, drug traffickers also use these devices to store information related to the financial transactions that occur during the course of their drug trafficking, such as drug ledgers and financial accounts and transactions. In my experience, the devices used by drug traffickers often contain evidence relating to their drug trafficking activities, including, but not limited to, contact lists, lists of recent call activity, stored text and voice mail messages, photographs and video recordings, GPS and location information, and financial accounts and records. Information stored within a mobile device may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element, or, alternatively, to exclude the innocent from further suspicion. In my training and experience, information stored within a mobile device (e.g., registry information, communications, images and movies, transactional information, records of session times and durations, internet history, and anti-virus, spyware, and malware detection programs) can indicate who has used or controlled the mobile device. This "user attribution" evidence is analogous to the search for "indicia of

occupancy" while executing a search warrant at a residence. Information stored within a mobile device may provide relevant insight into the device user's state of mind as it relates to the offense under investigation. For example, information within the mobile device may indicate the owner's motive and intent to commit a crime (e.g., internet searches indicating criminal planning), or consciousness of guilt (e.g., running a "wiping" program to destroy evidence on the mobile device or password protecting/encrypting such evidence in an effort to conceal it from law enforcement).

o. Drug traffickers often maintain drugs, drug proceeds, ledgers and other documents related to drug trafficking, and firearms, in their primary residence or place of business and in their vehicles to afford them ready access to those items.

p. Drug traffickers often conceal drugs, drug proceeds, firearms, and ammunition on the curtilage of their property, including buried underground and inside of vehicles, garages, storage sheds, and other unattached buildings, in order to prevent law enforcement or individuals who seek to rob them from discovering such items.

q. Drug traffickers often place ownership of vehicles, real estate, telephones and other assets in nominee names and register utility services in nominee names to avoid law enforcement detection.

## SUBJECT PREMISES

6. The following information is based upon my personal knowledge, as well as information provided by other local officers and is presented as probable cause to seek issuance of a search warrant allowing agents to enter and conduct a search of the property of Esteban

Marquez-Nunez, located at 803 E. 5ht St, Roswell, NM, 88201, (hereinafter the "Subject Premises") more fully described in Attachment A.

7. The Subject Premises is the residence located at 803 E. 5th St, Roswell, New Mexico, 88201. The Subject Premises to be searched includes a includes a single-family home structure. The residence is constructed out of brick, red in color, and has a salmon color trim. There is a porch awning attached to the front of the residence. The front door faces the south and a driveway is located on the west of the front yard. The front yard has no fence.

8. Based on physical surveillance and undercover agent (UC) reporting, agents are aware that Marquez-Nunez is currently residing at the Subject Premises.

9. This Affidavit is intended to show only that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter. Facts presented in this Affidavit are based on my knowledge, observations, and direct participation in this investigation, as well as through conversations with other agents and/or persons involved in the investigation, and through the review of reports, and other documentation generated by myself and others during the course of this investigation and other related investigations.

10. The following information is presented as probable cause to search the Subject Premises. Because this Affidavit is being submitted for the limited purpose of establishing probable cause, I have not included each and every known fact regarding the instant investigation. More specifically, I have set forth only pertinent facts that I believe are necessary to establish probable cause to search the Subject Premises for evidence of violations of 21 U.S.C. §§ 841 and 846.

11. HSI and the NMSP Narcotics Unit are currently investigating Esteban Marquez-Nunez who is selling narcotics in Roswell, New Mexico. In May 2022, NMSP Narcotics Unit, initiated an investigation into a young Hispanic male, later identified as Esteban Marquez-Nunez, posting an assortment of narcotics on social media for sale. From May 2022 to August 2022, Marquez-Nunez would either meet on foot or have an unknown female drive him to the meeting locations to sell narcotics to a UC. Between May 2022 to August 2022, the UC purchased approximately 19.3 gross grams of fentanyl and 6.6 gross grams of Xanax from Marquez-Nunez.

12. On November 22, 2022, the UC contacted Marquez-Nunez via social media and arranged to purchase $300 worth of fentanyl pills. The UC agreed to meet Marquez-Nunez at the Planet Fitness parking lot, located at 1709 S. Main St, Roswell, NM. The UC arrived at the meeting location and observed Marquez-Nunez arrive in a 2017 silver Nissan Altima, displaying NM Temporary Tag 22t-346353 (hereinafter "Subject Vehicle"). Marquez-Nunez was identified the driver and sole occupant in the vehicle. The Subject Vehicle parked, and Marquez-Nunez waved the UC over to sit in his vehicle. The UC entered the front passenger side of the vehicle and observed a clear plastic bag of approximately 500 suspected fentanyl pills. Marquez-Nunez began to remove the fentanyl pills from the larger clear bag and placed them in a smaller clear bag. The UC exchanged $300 for approximately 3.8 grams of fentanyl. The drugs were sent to the Scientific Laboratory and tested positive for fentanyl.

13. On May 16, 2023, the UC contacted Marquez-Nunez via social media and arranged to purchase 14 grams of methamphetamine. Marquez-Nunez stated he only has seven

grams of methamphetamine for $120 and would also sell Xanax for $180. The UC agreed to meet Marquez-Nunez at the Allsup's parking lot, located at 520 E. 2nd St, Roswell, NM. NMSP agents established surveillance at the Subject Premises. Agents observed that the Subject Vehicle driven by Marquez-Nunez during the last deal no longer had temporary plates but instead had a valid NM license plate bearing BKZW78. Agents witnessed Marquez-Nunez exit the Subject Premises and enter the Subject Vehicle. Agent's followed Marquez-Nunez to the meet location. Marquez-Nunez did not make any stops between the Subject Premises and the meet location. The UC observed the Subject Vehicle enter the meeting location and confirmed that the driver and sole occupant was Marquez-Nunez. Marquez-Nunez parked and signaled to the UC to again sit in the Subject Vehicle. The UC entered the Subject Vehicle and similarly observed Marquez-Nunez holding a clear plastic bag containing suspected methamphetamine and Xanax. Marquez-Nunez stated to the UC that he usually purchases three pounds of methamphetamine at a time. The UC then exchanged $300 for 6.1 grams gross weight of methamphetamine and 19 Xanax pills weighing 6.4 grams gross weight. The drugs were sent to the Scientific Laboratory and tested positive for methamphetamine and Xanax.

14. On May 17, 2023, the UC again contacted Marquez-Nunez via social media and arranged to purchase 29 grams of methamphetamine and 26 Xanax pills for $450. The UC agreed to meet Marquez-Nunez at the Farmers Market Parking lot, located at 600 E. 2nd St, Roswell, NM. NMSP agents established surveillance at the Subject Premises. Agents observed Marquez-Nunez exit the Subject Premises and enter the Subject Vehicle. Agents followed Marquez-Nunez to the meet location. Marquez-Nunez did not make any stops between the Subject Premises and the meet location. The UC observed

Subject Vehicle enter the meet location and confirmed Marquez-Nunez as the driver and sole occupant. Marquez-Nunez then parked next to the UC. The UC exited the vehicle and entered the front passenger side of the Subject Vehicle. The UC observed Marquez-Nunez holding a clear bag of suspected methamphetamine and another small bag on Xanax. The UC exchanged $450 for 29 grams gross of methamphetamine and 25 Xanax pills. The drugs were sent to the Scientific Laboratory and tested positive for methamphetamine and Xanax.

15. On May 21, 2023, the UC contacted Marquez-Nunez via social media and agreed to purchase $300 of fentanyl. The UC agreed to meet at the Farmers Market parking lot. While the UC was at the meet location, Marquez-Nunez informed the UC that he did not have all the fentanyl. The UC requested Xanax instead of fentanyl. NMSP agents established surveillance at the Subject Premises. Agents observed Marquez-Nunez exit the Subject Premises and enter the Subject Vehicle. Agents followed Marquez-Nunez to the meet location. Marquez-Nunez did not make any stops between the Subject Premises and the meet location. The UC then observed Marquez-Nunez arrive at meeting location in the Subject Vehicle. Marquez-Nunez was holding a small clear bag containing suspected fentanyl and Xanax pills. The UC exchanged $300 for 6.5 fentanyl pills and 25 Xanax pills. The drugs were sent to the Scientific Laboratory and tested positive for fentanyl and Xanax.

16. On May 22, 2023, Marquez contacted the UC and arranged to sell 112 grams of methamphetamine for $1,250. The UC agreed to meet at the Farmers Parking lot on May 24, 2023.

17. On May 24, 2023, HSI and NMSP agents established surveillance at the Subject Premises. Agents witnessed Marquez-Nunez exit the Subject Premises and enter the Subject Vehicle. Agents followed Marquez-Nunez to the meet location. Marquez-Nunez did not make any stops between the Subject Premises and the meet location. The UC observed Subject Vehicle enter the meeting location and identified the driver and sole occupant as Marquez-Nunez. Marquez-Nunez then parked next to the UC. The UC exited the vehicle and entered the Subject Vehicle and sat in the front passenger side of the vehicle. Marquez-Nunez reached into the center console and grabbed a gallon size clear plastic bag containing suspected methamphetamine. The UC exchanged $1,250 for the suspected methamphetamine.

18. Following the controlled purchase on May 24, agents maintained surveillance of Marquez-Nunez and the Subject Vehicle. Marquez-Nunez was observed going to Wells Fargo Bank, located at 140 S. Main ST, Roswell, NM and go to an outdoor ATM in the vehicle lanes. Agents witnessed Marquez-Nunez deposit money into the ATM. Surveillance was terminated a short time later. The suspected methamphetamine that was purchased from Marquez-Nunez that day was field tested with a TruNarc and tested presumptive positive for the properties and characteristics of methamphetamine. The methamphetamine had a total gross weight of 122 grams. The drugs were transported and booked into the HSI El Paso evidence room and will be sent to the Drug Enforcement Administration laboratory for testing.

19. On July 21, 2023, the UC logged onto Telegram and took photos of Marquez-Nunez' postings, showing a large brick of what appeared to be cocaine in a clear vacuum sealed bag stating $700/half, $1200/ZIP, 4K/QP "Quarter Pound", $7.8K/HP "Half Pound"

14K/Pounds on his telegram social media application. At that time Marquez-Nunez had 108 members who was allowed to view the posting.

20. On August 1, 2023, the UC contacted Marquez-Nunez on his known personal phone number and attempted to arrange the purchase of three pounds of methamphetamine. Marquez-Nunez responded, "Let me try to get them for next week." Marquez-Nunez later replied, "Hey bro im only geeting 2pounds because I don't have much money to buy." The UC agreed and set a meet time for Friday, August 11, 2023, at noon.

21. On August 7, 2023, the UC contacted Marquez-Nunez on his known personal phone number and asked, "We still locked in for Friday?" Marquez responded, "Yo g I only got Half Pound left, Thays all my plug had left, But I can get u w blues to." Through further conversation the UC agreed to purchase half pound of methamphetamine and approximately 1,100 fentanyl pills for $5,600.

22. During further conversation, Marquez-Nunez sent a photo to the UC of a large clear bag containing blue fentanyl pills. Based on my training and experience, the number of pills observed in the photo is consistent with drug trafficking and not personal use.

23. Marquez-Nunez then stated, "I got everything ready for you bro," and sent the UC a video of what appeared to be a hand belonging to a male holding a smaller bag containing fentanyl pills.

24. On August 11, 2023, the UC contacted Marquez-Nunez on his known personal number and set the meet location at the Farmers Country Market, located at 600 E. 2nd Ave, Roswell, NM, for approximately 1100 hr. At approximately 1045 hrs agents established surveillance at the Subject Premises.

25. At approximately 1125 hrs, agents witnessed Marquez-Nunez exit the Subject Premises and enter the Subject Vehicle and drive away. Agents followed Marquez-Nunez to the pre-determined mee location and ensured Marquez-Nunez made no stops while enroute to the meet location.

26. At approximately 1130 hrs the UC observed Marquez-Nunez pull into the meet location parking lot driving the Subject Vehicle as the sole occupant. The UC exited the vehicle and approached the driver side window of the Subject Vehicle.

27. The NMSP Special Weapons and Tactics (SWAT) officers then initiated an arrest Marquez-Nunez.

28. In plain view, a bag of blue pills and white appeared to be white powder was lying between the driver side door and the driver seat.

29. Based on my training and experience, the photographs of large amount of narcotics shared with the UC, and knowledge of this investigation, I believe that Marquez-Nunez stores large quantities of narcotics at the Subject Premises. I further believe, based on my training, experience and knowledge of the investigation Marquez-Nunez keeps drug proceeds at the Subject Premises.

## CONCLUSION

30. Based on the foregoing, I submit that this Affidavit supports probable cause for a warrant to search the Subject Premises described in Attachment A and seize evidence of violations of 21 U.S.C. §§ 841 and 846 (possession with intent to distribute a controlled substance, and conspiracy to do the same).

Respectfully Submitted,

Joseph Walker
Task Force Officer
Homeland Security Investigations

Subscribed and sworn to before me this
11 day of August, 2023.

Jerry H. Ritter
United States Magistrate Judge